[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-12318

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSEPH BROME JACKSON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-tp-20037-KMM-1

————————————————

Before NEWSOM, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Joseph Jackson appeals the district court's denial of his motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1). He argues that the district court's order was insufficient to allow for meaningful appellate review. After thorough review, we vacate and remand for further proceedings.

The relevant background is this. In August 1998, a jury in the United States District Court for the Northern District of Florida found Jackson guilty of conspiring to possess with intent to distribute crack cocaine. The presentence investigation report ("PSI") prepared at the time of his conviction reported prior convictions for robbery and battery, and arrests without conviction for child abuse, arson, and aggravated assault. The district court imposed a 248-month sentence, followed by ten years of supervised release.

In December 2008, the district court reduced Jackson's sentence to 240 months under U.S. Sentencing Guidelines Amendment 706. In July 2015, Jackson completed his prison term and began serving his ten-year term of supervised release. In June 2018, his case was transferred to the Southern District of Florida, where he would serve the remainder of his supervised release term. In October 2018, Jackson moved for early termination of supervised release. The court denied his motion in a paperless order, based on its "review of the motion, the record, and being fully advised in the premises." Jackson's appeal was dismissed for want of prosecution.

In August 2020, Jackson filed a motion to reduce his sentence under the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 ("First Step Act"), arguing that a prior conviction used to enhance his sentence had been vacated. The government responded in September 2020, but the district court has not yet ruled on it.

In November 2022, Jackson filed the instant motion, seeking once again early termination of supervised release. He reported that since his release from prison in July 2015, he had not committed any supervised release violations; in fact, the U.S. Probation Office agreed -- in a letter quoted by Jackson about its position on his motion for early termination -- that he had "maintained stable residence with his family members and as of August 2019, he has owned and operated Live Life Love Handymen, LLC, a labor company[; and h]e recently obtained a Certified Driver License." The Probation Office also confirmed that Jackson had satisfied his DNA testing requirements; paid his special assessment; submitted to all required random drug screenings and received negative results; and complied with all other conditions of supervision. But the Probation Office said that as for whether Jackson met "the criteria for early termination, set forth in . . . 18 U.S.C. § 3553(a)," he had a violent criminal history that prevented him from "meeting criteria for our office to be in favor of early termination," although it "[g]ranted [that] these arrests occurred more than 20 years ago."

Jackson responded to the Probation Office's concerns by arguing in his motion that: (1) the Bureau of Prisons had not classified him as a violent offender and had primarily held him in low

security prisons or prison camps; and (2) he had been substantially rehabilitated (for instance, turning over to police a firearm he found) and become a productive member of the community. He attached letters from community members -- including a pastor, a police officer, and several others -- attesting to his good character.

The government responded to Jackson's motion. It noted that he had received a sentence reduction and previously had been denied early termination. But the government mistakenly said that Jackson's pending First Step Act motion was the motion at issue, providing in one place that: "In the instant motion [sic], the Defendant moves the court to reduce his sentence under the First Step Act because his Georgia conviction was vacated in 2004." On the next page, the government referred to the correct motion, arguing that Jackson was unqualified for early termination of supervised release, despite his rehabilitative efforts, because of "his prior criminal [sic], which includes strongarm robbery, child abuse, arson, and aggravated assault." The government did not cite to § 3583(e) or § 3553(a) or otherwise delineate the factors.

The district court denied Jackson's motion in a paperless order without holding a hearing. The court correctly noted that the motion sought early termination of supervised release and that the government had responded, and held: "UPON CONSIDERATION of the Motion, the pertinent portions of the record, the relevant statutory factors, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Motion for Early Termination of Supervised Release . . . is DENIED."

This timely appeal followed.

We review a district court's denial of a motion for early termination of supervised release for abuse of discretion. *United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making its determination, or makes clearly erroneous factual findings." *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021); *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) ("A district court abuses its discretion [in applying the § 3553(a) factors at sentencing] when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.") (quotations omitted).

A district court overseeing supervised release may terminate that term of supervised release after at least a year, upon considering certain factors enumerated in 18 U.S.C. § 3553(a) "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1) (citing the factors set forth in § 3553(a)(1), (a)(2)(B)–(D) & (a)(4)–(7)).[1]

---

[1] The specified § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (4)

Notably, the statute permitting early termination leaves out these two § 3553(a) factors: (1) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and (2) "the kinds of sentence available." *Id.* §§ 3583(e)(1), 3553(a)(2)(A), (3).

However, our review of "a district court's denial of a motion for early termination of supervised release . . . under an abuse of discretion standard . . . is not simply a rubber stamp." *Johnson*, 877 F.3d at 997 (quotations and citations omitted). Importantly, a district court must explain its decision sufficiently to allow for meaningful appellate review. *Id.* at 994–95, 997–98; *United States v. Stevens*, 997 F.3d 1307, 1317 (11th Cir. 2021) (considering a First Step Act sentence reduction). To do so, the "court must demonstrate that it has considered the § 3553(a) factors" when ruling on the early termination of supervised release. *Johnson*, 877 F.3d at 997. A district court "is not required to articulate the applicability of each factor, as long as the record demonstrates that the pertinent factors were taken into account." *United States v. Douglas*, 576 F.3d 1216, 1219 (11th Cir. 2009) (quotations omitted) (considering a 18 U.S.C. § 3582(c)(2) motion); *Johnson*, 877 F.3d at 994–95 (holding the necessity for meaningful appellate review of early termination decisions "mirrors our 18 U.S.C. § 3582(c)(2) precedent on the matter"

---

policy statements of the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (2)(B)–(D) & (4)–(7).

(footnote omitted)). Thus, an order may be sufficient for appellate review if the district court notes that it considered the parties' arguments, and the arguments cite and discuss the relevant statutory factors. *United States v. Cordero*, 7 F.4th 1058, 1071–72 (11th Cir. 2021). The fact that the district court conducted a releasee's trial and sentencing can also provide context and allow its order to be meaningfully reviewed. *Johnson,* 877 F.3d at 999 (noting that "[p]residing over a defendant's trial acquaints the sentencing judge with a wealth of information relevant to the § 3553(a) factors").

"But where the order is deficient in explanation, the record must *clearly imply that the relevant factors were considered* -- enough so that meaningful appellate review of the factors' application can take place, rather than speculation of whether they were taken into account in the first place." *Id*. at 998 (emphasis added). The district court "must make clear that [it] had a reasoned basis for choosing" to deny the motion. *Stevens*, 997 F.3d at 1317 (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1966 (2018)). For instance, it is not sufficient to merely refer to past orders when circumstances have changed and new arguments are raised. *Id*. Further, an order lacking explanation may be deficient where the defendant's "brief made no mention of the relevant § 3553(a) factors, and the Government was not ordered to respond." *Johnson*, 877 F.3d at 1000.

Here, the district court's order does not allow for meaningful appellate review. For starters, the district court did *not* conduct Jackson's original trial or sentencing. The court also did not hold a hearing on Jackson's first motion for early termination of

supervised release, and in denying that motion, it gave no explanation other than that it "review[ed] . . . the motion, the record, and [was] fully advised in the premises." Thus, we cannot look to that order to find "an explanation for its [subsequent] decision." *Id.* at 998. Then, when the court ruled on the instant motion -- Jackson's second motion for early termination of supervised release -- it again did not hold a hearing and still did not make clear "that it looked back at [the defendant's] trial or sentencing record," *id.*, only generally saying that it reviewed "the pertinent portions of the record."

Further, we cannot say for sure that the district court considered all the relevant § 3553(a) factors in denying Jackson's instant motion. As we've explained, the statutory provision concerning early termination of supervised release -- 18 U.S.C. § 3583(e)(1) -- includes all but two of the § 3553(a) factors. But while the district court said that it considered the "relevant statutory factors" in denying Jackson's motion, the court did not expressly state that it considered "the § 3553(a) factors," much less the § 3553(a) factors as pared down in § 3583(e)(1), nor did it discuss them in substance.

Moreover, looking to the record before the district court, Jackson's motion (including the section quoting the Probation Office's position) and the government's response did not cite any particular statutory factors, and can fairly be read to have focused on just one -- criminal history. Yet the Probation Office's treatment of this factor was somewhat equivocal, claiming on the one hand that Jackson's criminal history prevented it from "favor[ing]" termination of supervision, while also stressing the age of his prior crimes.

For its part, the government said only that Jackson's "prior criminal [sic], which includes strongarm robbery, child abuse, arson, and aggravated assault render him unqualified for early termination of supervised release," without any statutory citation. It's also worth noting that the government's response incorrectly described the "instant motion" as seeking to reduce Jackson's sentence under the First Step Act, when the "instant motion" actually sought to terminate his supervised release. Importantly, a motion under the First Step Act does not require a consideration of the § 3553(a) factors. *Stevens*, 997 F.3d at 1316. So, at the very least, it is not crystal clear that the government fully addressed the "history and characteristics" factor found in the relevant statutes, or perhaps that it even squarely addressed termination of supervision at all.

In any event, assuming that we could "clearly imply" from the record that the district court considered § 3553(a)(1)'s "history and characteristics" factor based on the parties' filings, we've identified criminal history as something that may be viewed differently over time. In *Johnson*, we remanded to the district court for further explanation of its cursory denial of a § 3583(e) motion although that very court had presided over the defendant's trial twenty years prior, since "the violent conduct and prior convictions that concerned it at Johnson's 1997 sentencing are now between twenty and thirty years old." 877 F.3d at 999. As we explained, "[t]heir impact on the Court's decisionmaking could certainly have diminished with the passage of time." *Id*. "Without any indication from the Court, it would be unacceptable speculation to impart sentencing considerations from 1997 to this case." *Id*.

This case is on all fours with *Johnson*. Jackson's original trial and sentencing occurred in 1998, and the instant motion was denied in 2023. This means that when the relevant filings mentioned Jackson's criminal history, *all* of it occurred at least twenty-five years ago. And while Jackson touched on his rehabilitation efforts and his good behavior since he was released, which both the Probation Office and the government confirmed, there is no clear indication that the district court considered this more recent mitigating evidence nor how it should be weighed against his prior criminal history. Again, all the district court told us is that it was denying Jackson's § 3583(e) motion based on its consideration of "the Motion, the pertinent portions of the record, the relevant statutory factors, and being otherwise fully advised in the premises."

On this record, as in *Johnson*, we simply cannot say that "clear and compelling reasons to deny relief leap out from the record." *Id*. at 998 (quotations omitted). It is particularly muddled in this case since *all three positions* that were before the district court -- Jackson's, the government's, and the Probation Office's -- recognized the conflicting circumstances surrounding Jackson's distant and recent past. Without more, the district court's order is insufficient for us to determine if it considered all the factors made relevant by § 3583(e)(1), if it considered improper factors, or if it made a clear error of judgment based on the information it considered. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**